UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPHINE JAMES                                              CIVIL ACTION

VERSUS                                                       NO:     04-0194

NEW CENTURY MORTGAGE CORP., ET AL.                           SECTION: "T" (4)

## ORDER

Before the Court is a **Motion to Quash and/or For Protective Order (doc. # 70)** filed by a non-party, True Title, Inc. seeking an order from this Court quashing or modifying a subponena issued by the plaintiff, Josephine James, and a **Motion to Compel Compliance with Subpoenas and for Sanctions (doc. #73)**, filed by James seeking an order from this Court compelling True Title to respond to the subpoena. James also seeks sanctions in the form of attorney's fees.

### I.      Factual Background

James sued New Century Mortgage Corporation, Aurora Financial Services, Inc., PCFS Mortgage Resources, and Ralph Williams, (collectively "the defendants") contending that she unwittingly entered into an exorbitantly priced mortgage loan through a mortgage broker and a contractor as a result of fraud, misrepresentation, and unfair trade practices. James alleges that the mortgage lender did not tell her that she did not have to execute the mortgage simply because she signed a loan application or received disclosure forms and that the lender never told her she could lose her home if she defaulted on her obligations. Consequently, she contends that the lender

violated 15 U.S.C. § 1639(a).  James seeks rescission of the mortgage loan and damages against the lender, mortgage broker, and contractor.

James alleges that this transaction is a high interest mortgage loan under the Home Equity Protection Act because the points and fees charged to James exceeded 8% of the total loan amount. When calculating the points and fees, HOEPA includes the charges listed in section 1605(e) of this title "unless (i) the charge is reasonable; (ii) the creditor receives no direct or indirect compensation; and (iii) the charge is paid to a third party unaffiliated with the creditor."  Section 1605(e) includes fees typically incurred by the title company.

On March 13, 2006, James served a subpoena on True Title, the title company responsible for James's closing.  The subpoena was returnable on March 22, 2006.

### A. The Subpoena

James's subpoena seeks eleven areas of inquiry and six types of documents.  However, the Court will only list the areas and types of documents in dispute.   The disputed sections can be summarized as follows:

(6)   The preparation of, handling, maintenance, and management of James's loan, including the entire loan file.

(8)   True Title's policies with respect to the preparation of, handling, maintenance, and management of closings around the time of James's loan.

(9)   The selection or retainer of True Title in connection with James's loan.

(10)  Any and all persons selected and retained to perform services in connection with the loan.

(11)  The name and contact information for anyone that billed True Title for any services in connection with the loan.

(12)  The nature and extent of the relationship between True Title and anyone named on the HUD-1 settlement statement.

The disputed sections of the subpoena duces tecum can be summarized as:

    (1)    Any and all title work.

    (4)    Any and all agreements between True Title and any person or organization named in the subpoena.

### B. The Motion to Quash

On March 21, 2006, True Title filed a motion to quash and/or protective order. In its motion to quash, True Title alleges that it complied with the subpoena issued previously by James seeking her loan closing file. Further, while True Title indicated it did not object to many of the areas of inquiry, it did object to areas of inquiry 6, and 8 through 12, and document requests 1 and 4. True Title contends these requests are irrelevant, duplicative, or confidential.

James opposed the motion, contending that True Title failed to make any showing that the materials are confidential or proprietary business information, nor did True Title explain how the requests are not relevant.[1] James then filed a motion to compel arguing that the objections raised by True Title's motion to quash are meritless and seeking sanctions against True Title for failing to appear at the noticed deposition.

True Title opposed the motion to compel, continuing to contend that certain areas of inquiry and requests for production were repetitive or not relevant. True Title contends that because it is a non-party and that these areas of inquiry are not relevant, any burden imposed on a it would be undue.

### II. Standard of Review

The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v Lando,* 441 U.S. 153, 176 (1979).

---

[1] James also alleged that a Rule 37.1 Certificate was attached. However, the Court notes True Title did attach the required certificate.

Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), and "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Courts have recognized that while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Elecs. Corp. v Exzec, Inc.,* 1998 WL 9181, *3 (N.D.Ill 1998) (quoting *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 223 (N.D.Ill.1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts have also recognized that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

Federal Rule of Civil Procedure 45(c) provides protection for persons subject to subpoenas. *Hobley v. Burge*, 223 F.R.D. 499, 502 (N.D.Ill. 2004). Under Rule 45(c)(3), a court shall quash or modify a subpoena if the subpoena subjects a person to undue burden. *Travelers Indemnity Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111 (D.Conn, 2005) (citing Fed.R.Civ.P. 45(c)(3)(A)(iv). The burden of persuasion in a motion to quash a subpoena is borne by the movant. *Id.(citing United States v. Int'l Bus. Mach. Corp*., 83 F.R.D. 97, 104 (S.D.N.Y.1979)).

**III.    Analysis**

    **A.    The Areas of Inquiry**

        1.    **Area of Inquiry Number 6**: *The preparation of, handling, maintenance, and management of James's loan, including the entire loan file.*

True Title originally objected to area of inquiry number 6 contending it was repetitive of an

earlier area of inquiry.  Neither of James's motions directly address True Title's contention.

During the hearing, the Court concluded that area of inquiry number 6 is necessarily subsumed within area of inquiry number 5.  Accordingly, the Court concluded that area of inquiry number 6 was duplicative, and therefore struck the area of inquiry from the subpoena.

>    2.    **Area of Inquiry Number 8**:  *True Title's policies with respect to the preparation of, handling, maintenance, and management of closings around the time of James's loan.*

True Title objected to area of inquiry number 8 contending that it is irrelevant, beyond the scope of the litigation, and seeks confidential and proprietary business information.

James alleges area of inquiry number 8 is relevant because certain documents such as bills for a title exam or Federal Express were not produced when True Title turned over the loan file. James seeks information as to whether those documents were routinely kept and if they are routinely kept, why they were not provided in an earlier discovery request.

At the hearing, True Title further contended that this area of inquiry could lead to all manner of questions dealing with other closing files.  However, the Court noted that the area of inquiry could not be read as broadly as True Title contended.  Further, the Court noted that whether True Title inadvertently did not follow a particular policy or practice for the James file is relevant to the issue of whether the proper fees were charged.

>    3.    **Area of Inquiry Number 9**:  *The selection or retainer of True Title in connection with James's loan.*

True Title objected to area of inquiry number 9 also contending that it is irrelevant, beyond the scope of the litigation, and seeks confidential and proprietary business information.

James alleges that area of inquiry 9 is relevant based on the "thicket of relationships among True Title and Defendants Aurora, the loan broker, New Century, the original lender; and G. Patrick Hand, Jr., True Title's owner and attorney of record for Aurora and New Century."  James alleges

that based on these relationships, she is curious about the selection of True Title, the price of the services, and whether the selection of True Title was based on the prices True Title would charge for the closing. James alleges these questions bear on whether the fees charged by True Title are reasonable.

As James noted at the hearing, there could be an incentive to charge the maximum allowed to artificially inflate the mortgage. The Court concludes that the selection of True Title to handle James' loan and the relationships among the loan broker and the original lender may well lead to admissible evidence regarding whether the prices charged by True Title are, in fact, reasonable. Thus, this request is relevant.

    4.    **Area of Inquiry Number 10**: *All persons selected and retained to perform services in connection with the loan*

True Title objected to area of inquiry number 10 contending that it is irrelevant, beyond the scope of the litigation, and seeks confidential and proprietary business information.

In area of inquiry number 10, James seeks the identification of all persons that did work in connection with the loan because she alleges their identities are relevant so that she can subpoena those individuals. James alleges she can then determine if the work performed and the fee assessed is reasonable.

On closer examination, this Court concludes that area of inquiry number 10 is duplicative of areas of inquiry 3, 11, and 12.[2] During the discussion of area of inquiry number 11, the Court informed James's counsel of its conclusion that 3, 11, and 12 covered the same areas of inquiry and were thus duplicative. The Court then advised James's counsel to pick one area of inquiry. James's

---

[2] Area of inquiry number 3 seeks all work performed by True Title, its agents contractors or subcontractors in connection with James's loan; area of inquiry number 11 seeks the name and contact information for anyone that billed True Title for any services in connection with the loan; area of inquiry number 12 seeks the nature and extent of the relationship between True Title and anyone named on the HUD-1 settlement statement.

counsel complied and choose area of inquiry number 12.  The Court then struck areas of inquiry 11 and 3.  Because this Court concludes that area of inquiry 10 is also duplicative for the same reason, it strikes it as well.

### B. Request for Production of Documents

1. **Request for Production Number 1**: *Any and all title work.*

True Title objected to document request number 1 contending that it is irrelevant, beyond the scope of the litigation, and seeks confidential and proprietary business information.  James alleges that these documents are directly relevant to whether the title work allegedly performed for James, was, in fact, performed, and if so, what was done to earn the charges.  James alleges that this is relevant for determining whether the fees charged were reasonable.

However, at the hearing, the Court queried True Title as to whether any title work existed that would not be found in James' closing file.  True Title assured the Court that any title work done on behalf of James would be found in her file which it already produced.  Accordingly, the Court concluded that request for production of documents number 1 was duplicative and struck the request.

2. **Request for Production Number 4**: *Any and all agreements between True Title and any person or organization named in the subpoena.*

True Title objected to document request number 4 also contending that it is irrelevant, beyond the scope of the litigation, and seeks confidential and proprietary business information.  James alleges that these documents in document request number 4 are relevant because the setting of rates is relevant to whether the charges James paid to True Title are reasonable.

The Court noted that in this case, James is seeking information about how, and in what way, True Title sets its rates.  This request is directly relevant to the reasonableness of these rates.  Accordingly, the Court concluded that the existence of any agreements setting fees is reasonably calculated to lead to discoverable evidence.  However, it further informed James that her 30(b)(6)

deposition failed to notice this as an area of inquiry. Thus, the Court noted that while True Title must produce any written documents, James cannot question the deponent about these agreements.

    **C.**    **Sanctions**

In its motion to compel, James seeks sanctions against True Title for its failure to appear for the March 22, 2006 deposition. Specifically, James seeks an award of the attorney's fees and costs in connection with her appearance at the March 22, 2006 deposition, and the costs associated with the filing of her Motion to Compel. James also seeks sanctions against True Title's attorney for advising True Title not to appear. James notes that she served the subpoena on March 13, 2006, and it was returnable on March 22, 2006, but that True Title did not file its motion to quash until March 21, 2006, the day before the subpoena was due.

In support, James relies on the Fifth Circuit's holding in *King v. Fidelity National Bank of Baton Rouge*, which noted that when a person refuses to appear pursuant to a subpoena, sanctions are appropriate. *See* 712 F.2d 188, 191 (5th Cir. 1983). James also cites to *Barnes v. Madison* for the proposition that the filing of a motion to quash does not relieve a party of appearing at a deposition. *See* 79 Fed.Appx. 691 (5th Cir. 2003).

True Title argues that the cases cited by James deal solely with parties to the action, and that as a non-party, sanctions are not applicable. Further, True Title indicated at the hearing on this matter that it called James seeking a compromise on the issues addressed here, however, James was unwilling to compromise.

In support of its position that sanctions are not appropriate, it cites to Federal Rule 45(c)(2)(B) which provides that:

> a person commanded to produce . . . may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party . . . the written objection to inspection or copying. . . . If objection has been made, the party service the subpoena may, upon notice to

>the person compelling production move at any time for an order to compel the production.

True Title alleges that because it is a non-party to the litigation, its motion to quash is considered a timely objection and under Federal Rule 45(c)(2)B the proper remedy is not sanctions, but a motion to compel.

James responds that objecting by filing a motion to quash only excuses performance for True Title's performance under the subpoena duces tecum. James contends that the motion to quash does not excuse True Title's failure to appear at the noticed 30(b)(6) deposition.

The Court first notes that under Rule 45, the proper method for objecting to a subpoena duces tecum is a motion to quash. *See* Rule 45(c)(2)(B). However the Court notes that "the mere act of filing a motion for a protective order does not relieve a *party* of the duty to appear; the *party* is obliged to appear until some order of the court excuses attendance." *Barnes,* 79 Fed.Appx. at 707 (emphasis added). However, what distinguishes the sanctions awarded against a party in *King* and in *Barnes*, and the sanctions sought in this case is that here, True Title is a non-party to the litigation.

As *Barnes* makes clear, the Rules contemplate sanctions against a party for failure to attend a deposition, however, the Rules do not explicitly contemplate sanctions against a non-party. *Id.* Indeed, the Court notes that while it may be in the Court's power to sanction a non-party, courts are generally reluctant to do so. *See Natural Gas Pipeline Co. of America v. Energy Gathering Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993). In *Natural Gas*, the Fifth Circuit noted that "although it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties, there is no doubt that this power may be applied to attorneys in the case." *Id.* In a footnote, the *Natural Gas Court* did not foreclose the option of sanctioning a non-party when it noted that other Courts have held that Courts have the inherent power to sanction non-parties. *Id.* The Court concludes, that based on True Title's timely filing of the motion to quash, and its status

as a non-party, sanctions are not appropriate in this case.

Accordingly,

**IT IS ORDERED** that True Title's **Motion to Quash and/or For Protective Order (doc. # 70)** is **GRANTED IN PART** and **DENIED IN PART.** It is granted to the extent that areas of inquiry, 3, 6, 10, and 11 and request for production number 1 are struck, it is denied to the extent that True Title seeks to quash the subpoenas.

**IT IS FURTHER ORDERED** that , Josephine James's **Motion to Compel Compliance with Subpoenas and for Sanctions (doc. #73)** is **GRANTED IN PART and DENIED IN PART**. It is granted to the extent that True Title is compelled to respond to areas of inquiry 1, 2, 4,5, 8, 9, and 12 and requests for production 2, 3, 4, and 5.[3] It is denied for all other areas of inquiry, requests for production, and request for sanctions.

New Orleans, Louisiana, this __15th__ day of May 2006

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] The Court notes that because of James's misnumbering, there is no area of inquiry number 7.