UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPHINE JAMES** | **CIVIL ACTION** |
| **VERSUS** | **No. 04-194** |
| **NEW CENTURY MORTGAGE CORP.,** *et al.* | **SECTION:  I/4** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendants PCFS Mortgage Resources ("PCFS"), Provident Bank ("Provident"), and Deutsche Bank National Trust Company ("Deutsche Bank").  Also before the Court is a motion for summary judgment filed on behalf of defendants Aurora Financial Services, Inc. ("Aurora"), and New Century Mortgage Corporation ("New Century Mortgage").  For the following reasons, defendants' motions are **GRANTED IN PART AND DENIED IN PART**.

## *BACKGROUND*

This litigation arises out of a mortgage loan agreement and a residential loan application signed by the plaintiff, Josephine James**,** on or about January 22, 2003.  In 2000, plaintiff,

Josephine James, purchased a home at 1640-1642 North Claiborne Avenue in New Orleans for $12,000.00. Plaintiff was 61 years-old at the time, and this was the first home she had ever purchased. When she purchased the home, she was living next door at 1644 North Claiborne Avenue. Until Hurricane Katrina severely damaged her home, plaintiff and several family members under her care--including her mother, son, granddaughters, and nephew--have lived at various times at 1640-1642 North Claiborne Avenue.[1] By January 2003, plaintiff owed less than $4,000.00 on the home, which--according to an appraisal at the time--was worth $68,000.00.[2]

As a result of Hurricane Isidore in 2002, plaintiff's home suffered severe roof damage, and she received funds from the Federal Emergency Management Agency to make the repairs. On or about October 30, 2002, plaintiff entered into a contract with defendant, Ralph Williams, to make roof and ceiling repairs to her home, as well as incidental repairs inside the house. The total cost of the work was $6,000.00, of which she paid him $5,600.00.[3]

Plaintiff alleges that in November 2002, Williams offered to help her secure a second "grant" for her home. Williams subsequently introduced plaintiff to Lawanda Terrell, a representative of defendant Aurora, and allegedly told plaintiff that Terrell would be able to help plaintiff get the second grant for her home repairs.[4] Plaintiff allegedly told Terrell that she lived

---

[1] Rec. Doc. No. 122-1, pp. 2-3. Plaintiff claims that, at some time after Ralph Williams, a home repair contractor, stopped working on her home, she moved into 1642 North Claiborne Avenue; she alleges that she was living there when Hurricane Katrina struck New Orleans. Rec. Doc. No. 122, Ex. 2, p. 3.

[2] Rec. Doc. No. 122-1, p. 4.

[3] Rec. Doc. No. 122-1, pp. 4-5.

[4] Rec. Doc. No. 122, Ex. 1, p. 124, ll. 15-21.

2

at 1644 North Claiborne Avenue, for which she paid rent in the amount of $350 per month. Plaintiff also allegedly provided Terrell with other documentation, including social security statements and bank statements, showing that she lived at 1644 North Claiborne Avenue. Plaintiff contends that neither Terrell nor Williams disabused her of the notion that what Aurora intended to obtain for her was not a loan, but rather a grant.[5]

On January 22, 2003, plaintiff entered into the mortgage loan transaction arranged by Aurora with New Century Mortgage. Plaintiff claims that she did not realize that she was entering into a mortgage agreement until the end of the closing meeting, at which time plaintiff believed that she could not back out of the arrangement.[6] Plaintiff claims that after points, fees, and settlement charges were assessed, the total loan principal was $45,000 with an annual percentage rate of 10.416%, making this a high-rate mortgage as defined by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1602(aa), and triggering additional disclosure requirements.[7] On January 30, 2003, plaintiff's loan was assigned to Provident; when plaintiff fell behind on her payments, Provident filed a foreclosure action in the Orleans Parish Civil District Court. Plaintiff's home was constructively seized by the sheriff in August 2004.[8] Subsequently, the foreclosure was stopped.[9] On March 3, 2006, the loan was assigned to Deutsche Bank.[10]

---

[5] Rec. Doc. No. 122-1, p. 6.

[6] Rec. Doc. No. 114-1, p. 4.

[7] Rec. Doc. No. 114-1, pp. 4-5.

[8] Rec. Doc. No. 122-1, p. 10.

[9] Rec. Doc. No. 122, Ex. 30.

[10] Rec. Doc. No. 122, Ex. 31.

Plaintiff alleges that she rescinded the loan several times. On December 9, 2003, plaintiff alleges that she rescinded the transaction by having her attorney send notice of rescission to defendant New Century Mortgage. In November, 2005, plaintiff allegedly sent notices of rescission to Provident and Deutsche Bank. On December 23, 2005, plaintiff allegedly made a qualified written request for an accounting by sending a letter to PCFS.[11]

On January 22, 2004, plaintiff filed this action. Plaintiff alleges that several instances of unfair and deceptive trade practices induced her to mortgage her property, including, *inter alia*, failing to provide her with a copy of the contract and disclosures, stretching the bounds of the "good faith estimate," and charging exorbitant mortgage broker fees and closing costs. Plaintiff brings claims pursuant to HOEPA, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq.*, in addition to other state law claims for fraud, breach of contract, failure to perform, and breach of warranty.

Defendants filed their motions on July 18, 2006. The motion filed on behalf of PCFS, Provident, and Deutsche Bank makes three arguments. PCFS argues that it cannot be held liable pursuant to the RESPA claim because it never received a qualified written request for an accounting from plaintiff. Provident and Deutsche Bank next argue that plaintiff's claims against them pursuant to HOEPA must fail because the property at issue was not her principal dwelling as that term is defined by statute. Finally, Provident and Deutsche Bank also argue that, as assignees of the loan, plaintiff cannot show that they violated TILA or HOEPA because

---

[11] Rec. Doc. No. 114-1, pp. 6-7.

she has not presented sufficient evidence that the alleged violations were apparent on the face of the loan documents.

Aurora and New Century Mortgage, in their separate motion for summary judgment, also argue that plaintiff's TILA and HOEPA claims must fail because the house at 1640-1642 North Claiborne Avenue was not her principal dwelling. These defendants also contend that plaintiff's LUTPA claim is perempted because it was not filed within one year of the alleged unfair trade practices.

*LAW AND ANALYSIS*

**I. Standard of Law**

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by

creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

## II. Discussion

*A. Plaintiff's Principal Dwelling as Defined by TILA and HOEPA*

Defendants Provident, Deutsche Bank, Aurora, and New Century Mortgage all contend that plaintiff's loan was not secured by her "primary residence" and that, therefore, the provisions of TILA and HOEPA do not apply.[12] Defendants argue that plaintiff did not live in

---

[12]As plaintiff quotes, TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The United States Court of Appeals for the Fifth Circuit applies an objective standard to alleged violations of TILA and has held that "the statute is meant to be construed liberally in favor of the consumer." *Fairely v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479-80 (5th Cir. 1995) (citing *Cody v. Cmty. Loan Corp.*, 606 F.2d 499, 505 (5th Cir. 1979), *cert. denied*, 446 U.S. 988, 100 S. Ct. 2973, 64 L. Ed. 2d 846 (1980)).

TILA requires the creditor to provide the consumer with certain disclosures, including the Truth in Lending Disclosure Statement, which contains the key terms of the loan. 15 U.S.C. §§ 1631, 1635(a). TILA also requires that the borrower be provided with two clear and conspicuous copies of her notice of right to cancel even after the loan agreement has been consummated. *Id.* § 1635(a); 12 C.F.R. §§ 226.5(b), 226.23(b). Lenders that fail to meet these requirements may be liable for rescission of the loan transaction. 15 U.S.C. §§ 1635(a), (f).

In 1994, Congress amended TILA with HOEPA, which "only applies to a subset of loans, those made at higher interest rates or with excessive costs and fees." *Horton v. First State Bank of Eldorado*, No. 05-4101, 2006 U.S. Dist. LEXIS 7647, at *7 (S.D. Ill. Feb. 9, 2006). If the total "points and fees" exceed 8% of the "total loan amount" as those terms are defined, HOEPA triggers certain requirements of and restrictions on the lender. 15

the mortgaged property at 1640-1642 North Claiborne Avenue, but instead resided at 1644 North Claiborne Avenue. Defendants note that plaintiff's personalized checks listed 1644 North Claiborne Avenue as her address,[13] and they cite to the numerous times during her deposition that plaintiff stated that she lived at the 1644 North Claiborne Avenue house.[14] Defendants also note that plaintiff received correspondence from the Social Security Administration at the 1644 North Claiborne Avenue property.[15] Plaintiff, however, contends that a material fact exists as to whether the property at 1640-1642 North Claiborne Avenue was her principal dwelling.

The protections provided by TILA and HOEPA only apply to loans secured by a consumer's principal dwelling. Under TILA, the borrower has a right to rescind a loan if: (1) the loan constitutes a "consumer credit transaction (not for business or commercial purposes) and (2) the terms of the loan involve the lender retaining or acquiring a security interest in the principal dwelling of the borrower. 15 U.S.C. § 1635(a); *Aschoff v. Osmond State Bank*, 760 F.2d 201, 202 (8th Cir. 1985) (holding that the "right of rescission . . . only applies to loans secured by the debtor's principal place of residence"). Similarly, HOEPA applies to "a consumer credit transaction that is secured by the consumer's principal dwelling." 15 U.S.C. § 1602(aa). "The term 'dwelling' means a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives." *Id.* § 1602(v). Though a dwelling need not be the consumer's principal dwelling to fall within the

---

U.S.C. § 1602(aa)(1)(B); 12 C.F.R. § 226.32(a)(1)(ii).

[13]Rec. Doc. No. 108-3, Exh. 5.

[14]Rec. Doc. No. 106-2, pp. 4-5, citing Ex. 1, Dep. of Pl.

[15]Rec. Doc. No. 108-2, p. 1.

Act's definition of dwelling, it must be the consumer's principal dwelling for purposes of exercising the right to rescind. *Scott v. Long Island Sav. Bank*, No. 85-2904, 1989 U.S. Dist. LEXIS 15720, at *6 (E.D.N.Y. Dec. 29, 1989) (citing the Official Staff Comment to 12 C.F.R. § 226.2(a)(19)).

Defendants rely on *Capital Quest v. Morales*, No. 96-9135, 1997 U.S. Dist. LEXIS 12905 (S.D.N.Y. Aug. 27, 1997), to support their arguments that plaintiff's principal dwelling was not 1640-42 North Claiborne Avenue. There, the court granted an unopposed motion by the plaintiff, who sought a judgment declaring that TILA did not apply to the loan at issue because the loan was not secured by the defendant's principal dwelling. The court noted that the defendant had no telephone listing at the home securing the loan, the defendant had attempted to take out another loan on another property by representing that the second property was her principal residence, and the defendant could not be located at the address in question. *Id.* at *3-4. The court cited Second Circuit language indicating that, for the purposes of TILA, a person could have only one principal dwelling at a time and that a second home or vacation home would not be considered a principal dwelling. *Id.* at *3 (citing *Scott*, 937 F.2d at 741).

Plaintiff contends that a genuine issue of material fact exists as to whether the 1640-42 North Claiborne Avenue residence qualifies as her principal dwelling; she contends that she resided only at a temporary, secondary residence next door at 1644 North Claiborne Avenue. Plaintiff notes that several members of her family have lived at the 1640-42 North Claiborne Avenue home and that she regards this as a "family house." She explains that the 1640-42 North Claiborne Avenue home is the only property she has ever owned, that she used the 1640-42 North Claiborne Avenue home to provide shelter for her elderly disabled mother, and that this

8

house was the only property on which she could have secured a loan.[16]

Despite defendants' assertions to the contrary, the facts in *Capital Quest* are not completely analogous to those in this case, and the Court does not find *Capital Quest* controlling. Here, plaintiff did not claim two different residences for the purpose of securing two separate loans, as the defendant in *Capital Quest* attempted. Instead, she used her property to secure financing while living in a separate property, using the 1640-42 North Claiborne Avenue home to house her family. Nor does it appear that the home at 1640-42 North Claiborne Avenue was a second or vacation home, which the Second Circuit indicated would not fall within the protections afforded by TILA, *see Scott v. Long Island Sav. Bank*, 937 F.2d 738, 741 (2d Cir. 1991) (citing 12 C.F.R. pt. 226, supp. I, at 392 (1991)); instead, plaintiff rented the 1644 North Claiborne Avenue residence.

The parties cite no other helpful authority, and the Court independently finds a dearth of cases on this topic. In *Scott*, the district court enumerated five factors to consider when determining whether a property is a party's principal dwelling:

> (1) whether the electricity, gas and other utilities are registered in that person's name; (2) whether the lease or mortgage is registered in that person's name; (3) whether the person's mail is delivered to that address; (4) the length of time that the person has lived at that address; (5) whether the person moved his belongings to that address.

1989 U.S. Dist. LEXIS 15720, at *9. The parties' briefs do not make clear in whose name the utilities at 1640-42 North Claiborne Avenue were registered. The second factor weighs in plaintiff's favor, as the mortgage was in her name. While it is apparent that plaintiff received at least some mail at her 1644 North Claiborne Avenue residence, there are no facts to suggest that

---

[16]Rec. Doc. No. 122-1, p. 18.

9

she did not receive any mail at 1640-42 North Claiborne Avenue. As for the fourth factor, plaintiff's affidavit indicates that, at various times, she lived at 1640-42 North Claiborne Avenue.[17] Finally, the parties do not go into any detail regarding the belongings, if any, that plaintiff kept at 1640-42 North Claiborne Avenue. Considering these factors, the Court finds that a genuine issue of material fact exists as to whether 1640-42 North Claiborne Avenue should be considered plaintiff's principal dwelling; therefore, summary judgment is not appropriate as to this issue.[18]

*B. HOEPA Claim*

Defendants, Provident and Deutsche Bank, argue alternately that, even if the 1640-42 North Claiborne Avenue residence is considered plaintiff's principal dwelling, the provisions of HOEPA do not apply because the loan at issue was not intended as a "second or subordinate residential mortgage" as required by the statute. *See* 15 U.S.C. § 1602(aa) (1) ("A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan . . . ."); *Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F. Supp. 2d 50, 54 (D.D.C. 2002) (citing 12 C.F.R. § 226.32 and defining a HOEPA loan as "a second or subordinate residential mortgage").

Plaintiff does not address this argument in her opposition. From the loan documents, it appears to the Court that the loan plaintiff received from New Century Mortgage cancelled her

---

[17] Rec. Doc. No. 122, Ex. 2, p. 3.

[18] Because an issue of fact exists as to whether the 1640-42 North Claiborne Avenue home was plaintiff's principal dwelling, the Court finds no need to address plaintiff's argument that her contract with New Century Mortgage provided plaintiff with additional contractual rights to rescind the mortgage in excess of those provided by TILA. See Rec. Doc. No. 122-1, pp. 19-22.

previous mortgage, leaving the new loan as the sole mortgage on the property.  Therefore, even if the 1640-42 North Claiborne Avenue home is considered plaintiff's primary dwelling, the loan is not one that falls within the ambit of HOEPA.  Accordingly, plaintiff's claims pursuant to that statute will be dismissed.

## C.  Peremption of LUTPA claims

Plaintiff's complaint includes allegations that defendants violated LUTPA by misrepresenting the mortgage loan, failing to provide plaintiff with required disclosures, and charging plaintiff an unconscionable loan fee.[19]  In their motion, defendants Aurora and New Century Mortgage argue that plaintiff's LUTPA claims are preempted by the one-year limitation period.  The LUTPA statute, La. Rev. Stat. § 51:1409(E), provides that "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."  This one-year time limitation is peremptive and, therefore, it is not subject to interruption or suspension.  *Keubler v. Martin*, 610 So. 2d 270, 271 (La. App. 5th Cir. 1992).

Defendants, in support of their motion for summary judgment, argue that plaintiff's claims under LUTPA are premised on certain events that preceded the loan closing of January 22, 2003.  Defendants argue that the alleged unfair and deceptive trade practices, i.e., the act of inducing plaintiff to mortgage her property, occurred on or before January 22, 2004.  Because plaintiff's original complaint was filed on January 26, 2004, more than one year after the alleged unfair trade practices, defendants contend that these claims should be dismissed.

Plaintiff argues, and this Court agrees, that this suit was filed on January 22, 2004, when

---

[19]Rec. Doc. No. 114-1, p. 11.

plaintiff filed a motion to proceed *in forma pauperis* ("IFP"). The IFP motion was granted,[20] and plaintiff's complaint was entered into the record on January 26, 2004.[21] It is the date the complaint was actually tendered to the Clerk of Court, not the date the pleading was formally entered, that determines when a suit is actually filed for limitations purposes. *Ynclan v. Dept. of the Air Force*, 943 F.2d 1388, 1392 (5th Cir. 1991) ("[A] delay by the clerk in stamping a complaint 'filed' due to the pendency of a motion to proceed IFP does not jeopardize the timeliness of the plaintiff's commencement of suit.") (citing *Hernandez v. Aldridge*, 902 F.2d 386, 388 (5th Cir. 1990), *cert. denied*, 498 U.S. 1086, 111 S. Ct. 962, 112 L. Ed. 2d 1049 (1991)); *see also Anderson v. City of New Orleans*, No. 03-3010, 2004 U.S. Dist. LEXIS 7048, at *3 (E.D. La. Apr. 15, 2004) (Duval, J.). As in *Hernandez*, plaintiff "had no control over the clerk's delay," 902 F.2d at 388, and she should not be penalized for such. Accordingly, any LUTPA violations which occurred within one year of January 22, 2004 are not perempted. Similarly, it does not appear to the Court that plaintiff's claim related to the loan closing fee she was charged on the closing date is perempted or that summary judgment is appropriate as to that claim.

Defendants further contend that all of the alleged unfair trade practices occurred before the loan closing on January 22, 2003; because these alleged violations occurred more than one year before plaintiff filed suit, plaintiff's claims are preempted. Plaintiff, however, argues that defendants' failure to correct their misrepresentations and failure to provide the proper disclosures are "continuing violations" that are not perempted. In addition, plaintiff argues that

---

[20]Rec. Doc. No. 2.

[21]Rec. Doc. No. 3.

12

because she was charged the allegedly unconscionable loan fee at the time of the mortgage transaction on January 22, 2003, her claims with respect to this fee fall within the one-year peremptory period.[22]

Where tortious conduct is a continuing act, the continuing tort doctrine is an exception to the commencement of prescription. See *Wilson v. Hartzman*, 373 So. 2d 204, 206 (La. App. 4th Cir. 1979). For the continuing tort doctrine to apply, a plaintiff must allege both continuous action and continuous damage. *Chiasson v. Doe*, 618 So. 2d 38, 41 (La. App. 3d Cir. 1993). When a plaintiff attempts to avail herself of the continuing tort theory, the plaintiff bears the burden of establishing its applicability. *In re Med. Review Panel for Maria Moses*, 788 So. 2d 1173, 1177 (La. 2001); *see also America's Favorite Chicken Co. v. Cajun Enters. Inc.*, 130 F.3d 180, 185 n.6 (5th Cir. 1997) (holding LUTPA claims subject to one-year peremptive period)

The doctrine of continuing torts arose out of Louisiana's immovable property law. *See* La. Civ. Code art. 3493, comment b. Louisiana courts, however, have since applied the doctrine in cases unrelated to immovable property. *See, e.g.*, *Bustamento v. Tucker*, 607 So. 2d 532, 538-39 (La. 1992). Generally, the cases that have recognized the doctrine have found the "torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action; but instead, the cumulative effect of regularly-occurring or continuous actions results in successive damages from day to day." *Hunter v. Tensas Nursing Home*, 743 So. 2d 839, 842 (La. App. 2d Cir. 1999).

In *Benton, Benton, Benton & Benton v. Louisiana Public Facilities Authority*, 672 So. 2d 720, 723 (La. App. 1st Cir. 1996), *writ denied*, 679 So. 2d 110 (La. 1996), the Louisiana

---

[22]Rec. Doc. No. 112-1, pp. 37-42.

appellate court found that LUTPA's peremptive period is subject to the continuing tort doctrine. Following a line of cases from Louisiana's First Circuit Court of Appeals, the Fifth Circuit held that the continuing violation doctrine applies to the LUTPA peremptive period. *See Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir. 2002) (finding acts committed during the term of a lease to be continuous in nature). Louisiana's Third Circuit Court of Appeals, however, has expressly held that the LUTPA's peremptive period is not subject to the continuing violation doctrine. *Glod v. Baker*, 899 So. 2d 642, 648-49 (La. App. 3d Cir. 2005), *writ denied*, 920 So. 2d 238 (La. 2006).[23] Despite this apparent confusion in the law, the Court will follow the Fifth Circuit's ruling in *Tubos* and apply the continuing violation doctrine to plaintiff's LUTPA claim.

Considering the facts presented, and viewing these facts in the light most favorable to plaintiff, the non-moving party, the Court finds that a genuine issue of material facts exists as to whether defendants' alleged misrepresentations and omissions were violations that continued until at least the January 22, 2003, loan closing date. Defendants' misrepresentations, while occurring prior to January 22, may have been--in the aggregate--continuing actions that improperly induced plaintiff to agree to the loan. Accordingly, plaintiff's LUTPA claims may proceed.

*D. RESPA Claim*

---

[23]In *Glod*, the court cited *Canal Marine Supply, Inc. v. Outboard Marine Corp.*, 522 So. 2d 1201 (La. App. 4th Cir. 1988), in support of its argument that the continuing violation doctrine would not apply to extend the limitation period on LUTPA claims, explaining that "[t]he fourth circuit explored the impact of a continuing tort on the LUTPA peremption period" in that case. 899 So. 2d at 646. The *Canal Marine* court strictly construed the LUTPA limitation period and held that the plaintiff's claims, filed more than one year after the acts giving rise to the violation, were perempted. 522 So. 2d at 1203. The plaintiff's argument in *Canal Marine* that its claims were timely, however, concerned the doctrine of *contra non valentum*; the plaintiff contended that the LUTPA limitation period should not run because it was unaware of some of the acts. *Id.* The *Canal Marine* court did not squarely address the continuing tort doctrine.

Plaintiff alleges that, on December 23, 2003, she mailed PCFS a "qualified written request" for an accounting pursuant to RESPA. The letter was addressed to PCFS at 4221 International Parkway, Suite 15, Atlanta, Georgia. She alleges that PCFS violated RESPA by failing to respond to this request within 20 days, as required by 12 U.S.C. § 2605(e). In its motion for summary judgment, PCFS asserts that plaintiff cannot establish this claim because PCFS never received the qualified written request.

12 U.S.C. § 2605(e)(1)(A) provides that,

[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays and Sundays) unless the action requested is taken within such period.[24]

The actual mailing address for PCFS was Suite 150, not Suite 15. Assistant Vice President for PCFS, Christopher Wyatt, stated in an affidavit that he reviewed the records and found that PCFS did not receive the written request.[25] Plaintiff argues that this evidence is insufficient to support summary judgment because Wyatt's affidavit does not state that he had personal knowledge of the procedures governing the receipt of mail by PCFS.[26] Plaintiff has not produced any evidence of her own to suggest that her qualified written request was received.

In support of her assertions, however, plaintiff cites to *United States v. Wilson*, 322 F.3d

---

[24] A qualified written request is "a written correspondence, other than a notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

[25] Rec. Doc. No. 106-4, p. 42 ¶3.

[26] Rec. Doc. No. 122-1, pp. 36-37.

15

353 (5th Cir. 2003). There, the court addressed whether a discovery letter had been sent to the defendant for the purpose of determining if the statute of limitations precluded the defendant's motion to dismiss his indictment. *Id.* at 355. The court rejected the testimony of a witness presented by the government to testify as to the routine business practices of the agency that sent the request, finding that the witness "was not a competent witness qualified to give evidence as to the correspondence procedures used." *Id.* at 362. Analogously, Wyatt's affidavit does not show that he is competent to testify as to the correspondence or routine business practice of PCFS, despite his testimony that he has reviewed the applicable records.

In their reply, defendants offer *Beck v. Somerset Technologies, Inc.*, as a counter-point to *Wilson*. 882 F.2d 993 (5th Cir. 1989). There, the court wrote that "[p]roof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." *Id.* at 996. Defendants point to the court's language to suggest that only a "properly directed" letter should enjoy this presumption.[27]

Plaintiff has produced a copy of the letter allegedly sent to defendant,[28] and the Court finds no evidence to suggest that such a minor error should negate the presumption that this letter was delivered. Notwithstanding Wyatt's testimony, defendant has not brought sufficient evidence to demonstrate the absence of material fact as to this issue. Wyatt does not profess to have personal knowledge of the mail room procedure, which would provide insight into what may have happened to the incorrectly addressed letter that plaintiff allegedly sent. Accordingly,

---

[27] Rec. Doc. No. 132, pp. 5-6.

[28] Rec. Doc. No. 122, Ex. 38.

summary judgment is inappropriate.

*E. Violations on the Face of the Disclosure Statement*

Finally, Provident and Deutsche Bank argue that plaintiff has put forth no evidence to demonstrate their liability as assignees of the loan pursuant to the requirements of 15 U.S.C. §§ 1641(a) and (e). In her complaint, plaintiff alleges that these defendants are liable for New Century Mortgage's failure to accurately disclose details of the loan because these inaccuracies were apparent on the face of the disclosure statement. 15 U.S.C. § 1641(e)(1)(A) creates liability for an assignee of a loan secured by real property where "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction." The statute further provides that "a violation is apparent on the face of the disclosure statement if (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this title." *Id.* § 1641(e)(2).

Plaintiff's memorandum in opposition to defendants' motion notes several instances in which a reasonable jury could find that the defendants' disclosures were inaccurate. A comparison of the "disclosure statement, any itemization of the amount financed, the note or any other disclosure of disbursement," in accordance with 15 U.S.C. § 1641(e), reveals genuine issues of fact as to whether the violations were apparent on the face of the documents. Summary judgment on this claim is denied.

Accordingly,

17

**IT IS ORDERED** that the motion for summary judgment[29] filed on behalf of the defendants, PCFS Mortgage Resources, Provident Bank , and Deutsche Bank National Trust, is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against these defendants pursuant to HOEPA are **DISMISSED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment[30] filed on behalf of defendants, Aurora Financial Services, Inc., and New Century Mortgage Corporation, is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against these defendants pursuant to HOEPA are **DISMISSED**.

New Orleans, Louisiana, October __17th__, 2006.

                                              LANCE M. AFRICK
                                  UNITED STATES DISTRICT JUDGE

---

[29] Rec. Doc. No. 106.

[30] Rec. Doc. No. 108.